```
                                                          U.S. DISTRICT COURT
                                                          DISTRICT OF VERMONT
                                                                 FILED
              UNITED STATES DISTRICT COURT
                       FOR THE                            2025 OCT 14 AM 9:38
                 DISTRICT OF VERMONT
                                                               CLERK
                                                          BY_____
                                                              DEPUTY CLERK
```

| | |
|---|---|
| SCOTT TRAUDT, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-01360 |
| ) | |
| PAUL ATKINS, in his official ) | |
| capacity as Chairman of the ) | |
| Securities and Exchange ) | |
| Commission, ) | |
| Respondent. ) | |

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS
(Doc. 12)

Petitioner Scott Traudt filed this mandamus action against the Chairman of the United States Securities and Exchange Commission ("Respondent") to compel Respondent "to take immediate corrective action by reopening two days of pay-to-close trading for Meta Materials Series A Preferred Shares which traded in the 'Over the Counter' ("OTC") equities market until being halted on 9 December 2022 by a U3 trade halt administered by the Financial Industry Regulatory Authority ('FINRA')." (Doc. 5 at 1.) Respondent moved to dismiss the Petition, arguing Petitioner did not have standing to pursue this claim, could not identify a waiver of sovereign immunity, and could only pursue the claims in his petition in a court of appeals. (Doc. 12 at 2.)

In addition to the Motion to Dismiss, Respondent filed a Motion to Stay Discovery during the pendency of the Motion to Dismiss. (Doc. 15.) Petitioner opposed the stay. (Doc. 18; Doc. 19.) On August 7, 2025, the court granted the Motion to Stay Discovery, finding Respondent's argument that the Second Circuit Court of Appeals had exclusive jurisdiction over Petitioner's

claim was likely meritorious. (Doc. 30 at 3–4.) Petitioner was given until August 9, 2025 to file a response to Respondent's Motion to Dismiss. (Doc. 25.)

In his response to the Motion to Dismiss, Petitioner concedes this court does not have jurisdiction to hear his claim. (Doc. 32 at 1.) Petitioner requests that, rather than dismiss this action, the court transfer the matter to the Second Circuit Court of Appeals under 28 U.S.C. § 1631. (*Id.* at 1–2.) Respondent opposes a transfer and argues that dismissal is appropriate. (Doc. 35.)

Petitioner is representing himself. Respondent is represented by Assistant United States Attorney Lauren Almquist Lively.

## Legal Standard

When a court finds it does not have jurisdiction over a civil action, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631. The Second Circuit has held that transfer to another court is required when: "(1) [the court] lack[s] jurisdiction over the case; (2) the transferee court would have possessed jurisdiction over the case at the time it was filed; and (3) transfer would be in the interest of justice." *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009) (citing 28 U.S.C. § 1631). Because "the term 'interests of justice' is vague, district courts have a good deal of discretion in deciding whether to transfer a case." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (quoting *Gunn v. U.S. Dep't of Agric.*, 118 F.3d 1233, 1240 (8th Cir. 1997)). "A court is authorized to consider the consequences of transfer before deciding whether to transfer . . . since whether or not the suit has any possible merit bears significantly on whether the court should transfer or dismiss it." *Id.* at 610–11 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988)). As a result, this court should "peek at the merits" of Petitioner's claim before deciding whether to transfer this matter to the Second

Circuit Court of Appeals so as not to waste the time and resources of another court. *Id.* at 610; *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005).

### Standing

Respondent first asserts Petitioner lacks standing to pursue this claim. To establish standing, Petitioner "must demonstrate (i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Here, Petitioner asserts that Respondent's "failure to supervise FINRA and prevent arbitrary and capricious market actions, including the improper halt of trading," caused his injury. (Doc. 36 at 2.)

The Supreme Court has recently reiterated that, when "a plaintiff challenges the government's unlawful regulation (or lack of regulation) of *someone else*, standing is not precluded, but it is ordinarily substantially more difficult to establish." *All. for Hippocratic Med.*, 602 U.S. at 382 (citation modified). This type of claim requires Petitioner to link his alleged injuries "to the government's regulation (or lack of regulation) of someone else." *Id.* Petitioner cannot, however, "rely on speculation about the unfettered choices made by independent actors not before the courts." *Id.* at 383 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5) (2013).

Here, Petitioner fails to articulate how Respondent's action (or lack of action) caused the alleged economic harm. Even if Respondent had acted to reverse the trading halt, Petitioner has not established that he would have been able sell his shares at a price which would allow him to avoid a loss. Petitioner cannot "show a predictable chain of events leading from the government

3

action [or inaction] to the asserted injury." *Id.* at 385. For this reason, the court cannot find that Petitioner is able to establish that his alleged injuries were likely caused by Respondent.

Additionally, Petitioner has not established how the alleged harm would be redressed by his requested remedy. In essence, Petitioner asks the court to compel Respondent to reopen trading of MMTLP shares which was halted on December 9, 2022 by FINRA. FINRA's announcement read as follows:

> Effective Friday, December 09, 2022, the Financial Industry Regulatory Authority, Inc. ("FINRA") halted trading and quoting in the Series A preferred shares of Meta Materials Inc. (OTC Symbol: MMTLP). Pursuant to Rule 6440(a)(3), FINRA has determined that an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP and that, therefore, halting trading and quoting in MMTLP is necessary to protect investors and the public interest.
>
> The trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022.

(Doc. 5, ¶ 36.) In sum, MMTLP shares ceased to exist on December 13, 2022. Petitioner's "Master Plan for Reinstating MMTLP Shares Under Ticker MMTRX" is a four-page document containing eleven steps, which include requiring a company to "adopt[] a new corporate name and public structure through reincorporation or a reverse merger with a public shell company to facilitate trading," having brokers "repopulate eligible shareholder accounts with MMTRX shares, excluding those with insider trading history," and restricting "trading to eligible shareholders (excluding insider traders) and short sellers, compelling closure of 2.65 million unclosed short positions with existing shares." (Doc. 18-2 at 2–5.) Even if all of these steps, which involve a number of different individuals and companies, were implemented perfectly, it is pure speculation to assume Petitioner would recoup his financial losses in this opportunity to trade. There can be no accurate prediction as to whether anyone would purchase the shares or, if they did, at what price. The court cannot find that Petitioner's alleged injury would "likely" be redressed by the

4

relief he requests but finds it to be, at best, speculative. *See Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (en banc). A "peek into the merits" suggests that Petitioner lacks standing and a transfer to the Second Circuit Court of Appeals would not be in the interest of justice.

### Conclusion

For these reasons, the court DENIES Petitioner's request to transfer this action to the Second Circuit Court of Appeals and GRANTS Respondent's Motion to Dismiss.

DATED at Rutland, in the District of Vermont, this 14th day of October 2025.

_____
Mary Kay Lanthier
United States District Court Judge